# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| SPRINT SOLUTIONS, INC. and SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) ) | Civil Action No: _____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| CONNECTIONS DIGITAL, LLC, TEON MILLER individually and d/b/a PHONEMAX, NORMAN LOPEZ and TROY SCOTT, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Sprint Solutions, Inc. and Sprint Communications Company L.P. (collectively "Sprint" or "Plaintiffs"), hereby file this Complaint for Damages and Injunctive Relief against Connections Digital, LLC, Teon Miller individually and d/b/a PhoneMax, Norman Lopez and Troy Scott (collectively, "Defendants"), and state:

## INTRODUCTION

1.     Sprint sells wireless handsets ("Sprint Phones" or "Phones") under the brands Sprint, Boost Mobile, Virgin Mobile, payLo, and Assurance Wireless for

35147413.1

use on Sprint's wireless network at prices significantly below the wholesale price of the Phones to make them more widely accessible to consumers.  Defendants and their co-conspirators are perpetrators of an unlawful scheme (the "Bulk Handset Trafficking Scheme" or the "Scheme") to profit from the illegal acquisition and resale of new Sprint Phones by stealing the substantial financial investment that Sprint makes in its Phones, for their own profit and to the detriment to Sprint and its customers.

2.      Defendants and their co-conspirators acquire the new Sprint Phones through various methods, including the use of "runners" and "credit mules."[1]  As part of the Bulk Handset Trafficking Scheme, the Phones, which may be purchased and sold multiple times, ultimately end up in the hands of someone other than the consumer with whom Sprint has a business relationship.  Along the way, the Phones are "unlocked" so they will operate on a wireless network other than Sprint's.  Often the ultimate user of the phone is located overseas, in a country where the wireless service provider does not underwrite the cost of new phones.

---

[1] A "Runner" is an individual or entity that makes multiple purchases of new Sprint Phones on behalf of phone traffickers like Defendants.  A "Credit Mule" is an individual or entity that signs up for wireless service with Sprint – never intending to comply with the terms of the agreement – to obtain new subsidized Sprint Phones for phone traffickers like Defendants.  A copy of the Federal Trade Commission's June 2014 Consumer Credit Mule Warning is annexed hereto as **Exhibit A**.

3.     Defendants' Scheme takes advantage of the fact that Sprint invests in its Phones to reduce the costs for its consumers; wireless service providers in other countries do not.   By obtaining the Sprint Phones under false or fraudulent pretenses from Sprint and diverting them to other markets where phones are not subsidized, the Scheme converts Sprint's investment dollars into profits for Defendants and their co-conspirators.  Although Defendants may participate in less than all of the steps in the process of diverting Sprint Phones, each of Defendants' acts is a violation of Sprint's rights and causes significant damage to Sprint. Additionally, as participants in the conspiracy, Defendants are liable for the harm caused to Sprint by the entire Scheme.

4.     The Scheme causes tremendous harm to Sprint and to consumers.  In addition to the pecuniary losses caused by Defendants' theft of Sprint's investment in the Phones, lost sales and market expenses, and lost expected customer revenue, Defendants' misconduct has harmed Sprint's relationships with its customers, dealers, retailers, and others.   Defendants' Scheme also involves unlawfully accessing Sprint's protected computer systems and wireless network; trafficking of Sprint's protected and confidential computer passwords; willful infringement of Sprint's trademarks; and/or stealing legitimate customer upgrades.   Defendants have caused substantial damage to Sprint's brand, image, and reputation.

5.      Sprint seeks to recover damages for the harm caused by Defendants' Bulk Handset Trafficking Scheme, and to obtain an injunction prohibiting Defendants from continuing to perpetrate the Scheme.

6.      All conditions precedent to filing this action have been performed, waived or excused.

7.      Sprint has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

## PARTIES, JURISDICTION, AND VENUE

8.      This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

9.      Sprint Solutions, Inc. is a Delaware corporation with its principal place of business in Reston, Virginia.

10.      Sprint Communications Company L.P. is a Delaware limited partnership with its principal place of business in Overland Park, Kansas.

11.      Defendant Connections Digital, LLC ("Connections Digital") is a Georgia corporation with its principal place of business at 1230 Peachtree Street, Suite 1966, Atlanta, Georgia 30309.  Upon information and belief, Connections Digital also operates a retail location at 230 Auburn Avenue NE, Atlanta, Georgia 30303.  Upon information and belief, Defendant Norman Lopez is the principal

and corporate organizer of Connections Digital and Defendant Troy Scott is an owner of Connections Digital.

12.   Defendant Teon Miller individually and d/b/a PhoneMax ("Miller") a/k/a "Jay" is an individual and a resident of College Park, Georgia and upon information and belief is an employee of Connections Digital and is personally engaged in, and helped facilitate, the improper conduct described herein.  Upon information and belief, Miller resides at 5420 Riverdale Road, Apt. J8, College Park, Georgia 30349.  Upon information and belief, Miller also operates a retail store under the name PhoneMax which is located at 1165 McLendon Avenue NE, Atlanta, Georgia 30307.

13.   Defendant Norman Lopez ("Lopez") is an individual and a resident of Norcross, Georgia and upon information and belief is the principal and corporate organizer of Connections Digital and is personally engaged in, and helped facilitate, the improper conduct described herein.  Upon information and belief, Lopez resides at 5140 Walden Mill Drive, Norcross, Georgia 30092.

14.   Defendant Troy Scott ("Scott") is an individual and a resident of Austell, Georgia and upon information and belief is an owner and principal of Connections Digital and is personally engaged in, and helped facilitate, the

improper conduct described herein.  Upon information and belief, Scott resides at 4333 Stonecrest Drive, Austell, Georgia 30106.

15.   Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 because Sprint's claims for violation of the United States Trademark Act, Title 15 of the United States Code and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* arise under federal law and because diversity exists between the parties and the amount in controversy exceeds $75,000.00 exclusive of costs, fees, and interest.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Sprint's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

16.   Defendants Miller, Lopez and Scott are subject to the personal jurisdiction of this Court because they are residents of Gwinnett, Clayton and Cobb Counties, respectively.  Defendant Connections Digital is subject to the personal jurisdiction of this Court because it a Georgia corporation with its principal place of business in Fulton County, Georgia.

17.   All Defendants are subject to the personal jurisdiction of this Court because they have conducted, engaged in and carried out business ventures within the State of Georgia; they have committed tortious acts within the State of Georgia;

and they have engaged in substantial and not isolated activity within the State of Georgia.

18.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendants either reside in this district or a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## SPRINT'S BUSINESS MODEL

19.    Sprint and its affiliates offer a comprehensive range of telecommunications services to consumers, businesses, and government users. Sprint currently serves more than 56 million customers nationwide, and is widely recognized for developing, engineering and deploying innovative technologies. The Sprint companies and affiliates highly value the outstanding business reputation they have worked hard to develop.

20.    Sprint's wireless program enables Sprint customers to choose from a variety of monthly voice and data plans for use on cutting edge devices on the Sprint wireless network.  In addition to being available through Sprint online, over the phone with authorized Sprint service representatives, and in its stores, Sprint Phones and wireless service are sold through authorized Sprint dealers and retailers around the country, with whom Sprint has contractual relationships.

21.     Sprint's business model is based upon Sprint's ability to deliver affordable, innovative, and desirable products and services to consumers.  Therefore, Sprint assists its customers in their acquisition of Sprint Phones for use on the Sprint network by selling the Phones for substantially less than what Sprint pays to the manufacturers for the Phones.  Sprint recoups the money it loses on the Phones through revenue earned on the sale of Sprint service, which customers must use to transmit and receive voice, text, and data on the Sprint Phones.  In addition to subsidizing Sprint Phones, Sprint also offers its customers the option of paying off the Phone in installments or leasing a Phone from Sprint, as well as providing discounts, rebates, and other incentive programs by which Sprint heavily invests in the Phones to the benefit of its customers. These types of substantial subsidies and investment programs are not offered by telecommunications carriers outside the United States; instead, the consumer must pay full price for the phones from the manufacturers.  The full value of the Phone in the case of theft or the difference between the value and the subsidy price offered by Sprint is the profit sought by the handset traffickers.

22.     Sprint Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the Phones. A copy of the Terms and Conditions is attached hereto as **Exhibit B**.  These Terms

and Conditions are set forth in printed inserts that are included with the purchase of every Sprint Phone.

23.     To make its customers' experience as convenient as possible, Sprint provides various methods for its customers to manifest their agreement to the Terms and Conditions, depending on the type of service they obtain and the method and sales channel through which they activate their service.  In some cases, customers are asked to sign a written contract, in others they acknowledge their agreement orally by phone, and in other situations they may indicate their agreement by clicking the appropriate buttons on a website.  In the case of pay-as-you-go or prepaid service, customers confirm their agreement by purchasing a Phone in a package that conspicuously indicates that their purchase or use of the phone constitutes their agreement to the Terms and Conditions.  All of the methods used by Sprint for obtaining its customers' agreement to the Terms and Conditions are legally valid and appropriate, and the Terms and Conditions constitute a valid and binding contract between Sprint and each of its customers.

24.     Sprint is able to offer its Phones to customers at reduced prices only if the Phones are used as intended on the Sprint wireless network.  Manufacturers that produce wireless phones for Sprint install proprietary software on the Sprint

Phones, requested and paid for by Sprint.  Among other things, this software is intended to prevent the Phones from being used outside the Sprint network.

25.    Wireless technology is constantly changing and improving, and the wireless industry is intensely competitive.  Sprint expends substantial resources to maintain its position as an industry leader and to ensure that its network, handsets, and all of its products and services are at the cutting edge of the latest technological developments.  Providing its customers with the highest quality and most advanced technology is a key differentiator for Sprint and central to its business strategy.  For example, Sprint was the first national wireless carrier in the United States to offer 4G service, and Sprint continues to aggressively develop, engineer, and deploy innovative technologies to benefit its customers.

26.    Sprint invests heavily in efforts to provide its customers with the most up-to-date wireless handsets, and shoulders most or all of the cost of purchasing a new phone for its customers.  Sprint makes phones available to new customers at a low cost when they initiate wireless service, and also provides new subsidized phones to existing customers at regular intervals.

27.    Sprint made a particularly significant and widely publicized investment for its customers in the Smartphone market.  As reported in The Wall Street Journal, Sprint agreed to buy 30.5 million iPhones from Apple over four

years, at a cost of more than $20 billion.  Indeed, Sprint has staked a significant amount of its business on the iPhone brand.  Copies of newspaper articles discussing Sprint and the iPhone are attached hereto as **Composite Exhibit C**.  As the demand, and therefore the price, for iPhones in various world markets skyrockets, Sprint's subsidized iPhones are a particularly attractive and lucrative target for participants in the Bulk Handset Trafficking Scheme.

28.     Sprint is continuously working to provide its customers with the latest in communications technology.  For example, Sprint undertook a massive "Network Vision" program to migrate millions of customers from the Nextel network, which used outdated iDEN technology, and to upgrade more than 25,000 wireless transmission facilities around the country to the latest 4G LTE transmission technology.  Sprint's practice of defraying the cost of handsets for existing customers is an essential part of its business model, and facilitates the upgrading of Sprint's network by helping to migrate customers from older technology phones to newer models.  Many of the various wireless transmission standards are not compatible with each other, so Sprint's customers must to switch to new Phones before Sprint can transition its network to the latest standard.  New handsets are also needed to utilize different radio frequencies and take advantage of Sprint's acquisition of wireless spectrum from various other companies, so as

not to overwhelm Sprint's network and to allow for the most efficient service for all Sprint customers.

29.     By outright stealing handset upgrades or stealing the investment in handset upgrades that Sprint intends to benefit its customers, Defendants' Scheme harms Sprint not only by misappropriating its investment in the Phones, but also by impeding Sprint's ability to upgrade its equipment and network facilities and efficiently and effectively serve its customers.  Sprint offers special Phone upgrade deals to its customers every 12 to 24 months to meet their high expectations and strong demand for the most technologically-advanced handsets, features, and services.  These upgrades are critical not just to Sprint's reputation and business relationships but also to Sprint's network speed and efficiency.

## SPRINT'S TRADEMARK RIGHTS

30.     Sprint Communications Company L.P. owns federal trademark registrations for the standard character and stylized Sprint® marks (collectively, the "Sprint Communications Marks").  Sprint Solutions, Inc. has been assigned the right to use and enforce the Sprint Communications Marks.   Copies of the certificates of registration issued by the United States Patent and Trademark Office are attached hereto as **Composite Exhibit D**.  The stylized Sprint Communications Marks are depicted below:

- 12 -

 

31.     Sprint has been assigned the right to use and enforce the standard character and stylized Virgin Mobile, payLo, Assurance Wireless and Boost Mobile trademarks (collectively, the "Assigned Marks"), the latter of which are depicted below:

    



The Sprint Communication Marks and Assigned Marks will collectively be referred to as the "Sprint Marks."

32.     Sprint uses the Sprint Marks on and in connection with its telecommunications products and services.

33.     Sprint Marks have become an intrinsic and essential part of the valuable goodwill and property of Sprint, who protects the Sprint Marks.  The Sprint Marks are well established and well known to customers and the trade as symbols identifying and distinguishing Sprint's products and services, and

- 13 -

signifying distinctive products and services of high quality.  Only Sprint and its expressly authorized, affiliated agents are permitted to use the Sprint Marks.  The Sprint Marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with Sprint.

## DEFENDANTS' MISCONDUCT

34.     Sprint has discovered that, although large quantities of its Phones are being purchased throughout the United States, a significant number of these Phones are not being used on the Sprint network.  Instead, entities and individuals such as Defendants and their co-conspirators, with no intention of lawfully connecting to or using the Sprint wireless network, are fraudulently acquiring and reselling Sprint Phones in bulk quantities.  The Phones are acquired, either directly by Defendants or through their co-conspirators, and then sold for a substantial profit and shipped directly overseas, where they can be used on other wireless carriers' networks, or shipped to other domestic traffickers, who often add them to larger shipments headed overseas.  The Phones are usually taken out of their original packaging, and all accessories, warranties, and manuals are removed, before being shipped overseas.  The Phones are often unlocked by Defendants or their co-conspirators, to raise their value and prepare them for use on foreign carriers. Defendants undertake these actions for their own profit.

35.     Once a Sprint Phone is unlocked and shipped overseas to be used on other wireless networks, Sprint no longer has a revenue source to recoup its investment on that Phone.

36.     If Sprint identifies a Phone as connected with theft, fraud, or other loss, the electronic serial number (ESN) is logged into Sprint's system and the Phone can no longer be used on the Sprint network.  This is done to protect Sprint from further harm and in attempt to deter criminal activity.  The Phone is thereafter referred to in the handset trafficking community as having a "Bad ESN."  As it is no longer a functioning Sprint Phone, the only value of a Bad ESN Phone is in unlocking the handset for use on other networks and overseas resale.

37.     Defendants are knowingly and willfully engaged in an enterprise that traffics in and resells Sprint Phones.  Defendants have acquired and sold large quantities of Sprint Phones through various co-conspirators.  While the complete extent of Defendants' activities in the Bulk Handset Trafficking Scheme is not yet known, Defendants are actively involved in several integral components of the conspiracy.

38.     Defendants are not authorized Sprint dealers or retailers.  Defendants have no legitimate connection to Sprint.

39.    Defendants are active participants in the Bulk Handset Trafficking Scheme.    Sprint initially identified Defendants' illegal activities through their craigslist advertisements soliciting unlimited new Sprint iPhones.    A sample of Defendants' advertisements is attached hereto as **Exhibit E**.

40.    In addition to soliciting new Sprint iPhones, the ads specify that Defendants will buy "Blacklisted" phones.    *Id.*   A "Blacklisted" phone is another name for a "Bad ESN" phone (discussed above) that has been identified by Sprint as connected with fraud, theft or other activity that precludes it from being legitimately activated on the Sprint network.    Defendants' active solicitation of phones with bad ESNs confirms that they do not intend to activate the new Sprint Phones on Sprint's wireless network and that Defendants are fully aware that the new Sprint Phones that they are trafficking are connected with fraud, theft or other illegal activity.    In fact, from their advertisements, it is clear that Defendants affirmatively seek out illicitly-acquired Sprint Products.    *See* **Exhibit E**.

41.    Defendants' various craigslist advertisements include the business contact information for Connections Digital, including the office address at 1230 Peachtree    Street,    Atlanta,    Georgia    30309    and    website    at www.connectionsdigital.com and the contact information for PhoneMax at 1165 McLendon Avenue, Atlanta, Georgia 30307.    *See* **Exhibit E**.  Each advertisement

provides the same contact telephone number, which is registered to Defendant Lopez. *Id.* Connections Digital is co-owned and operated by Defendant Lopez and Defendant Scott.

42.   In March 2014, undercover investigators for Sprint initiated communication to the phone number listed in the advertisements and inquired regarding Defendants purchase of new Sprint iPhones. A copy of the March 24 – April 24, 2014 text messages is attached hereto as **Composite Exhibit F**. Defendants' text response confirmed that they buy new phones, including new Sprint Phones, in bulk and that they buy both "good" and "bad" ESN phones. *Id.* During the communication, Defendant identified himself as "Jay," which the investigator later learned is an alias of Defendant Miller. *Id.*

43.   Defendant Miller confirmed that Connections Digital's corporate address is 1230 Peachtree Street, Atlanta, Georgia 30309 and that they also operate out of a retail store. *Id.* Defendant Miller agreed to meet the investigator in person to buy Phones.

44.   On or about March 28, 2014, the investigator travelled to Connections Digital's corporate office and met with Defendant Miller. Defendant Miller purchased two new Sprint iPhones. During the transaction he called Sprint in front of the investigator to inquire about the ESN status of the Phones. Defendant

Miller, who had used the name "Jay" in earlier communications with the investigator, identified himself to the Sprint operator as Teon Miller and the account holder as Norman Lopez. Defendant Miller was only able to confirm the ESN status of one Phone, but nevertheless bought both new Sprint iPhones from the investigator. Defendant Miller stated that he would need to consult his business partner prior to engaging in another large transaction. Upon information and belief, Miller's referenced business partner is Defendant Lopez, the Sprint account holder and principal of Connections Digital.

45. Sprint investigated the post-sale history of the Phones sold to Defendants and confirmed that both new Sprint iPhones disappeared and were never activated on the Sprint wireless network. On information and belief, these Phones were resold as new and shipped overseas, unlocked or to be unlocked, and used on a network other than Sprint.

46. Later that day, Defendant Miller again contacted the investigator and asked for 10 more new Sprint iPhones. Defendant Miller stated that if the second transaction also proceeded smoothly, Defendants would become regular buyers.

47. During their continuing text communications, Defendant Miller indicated that he has another buyer who would be interested in a standing weekly order of 40 new Sprint Phones. *See* **Exhibit F**.

48.   On April 12, 2014, an investigator met Defendant Miller at Connections Digital's corporate office and sold Defendants the requested ten (10) new Sprint iPhones.  Defendant Miller, who continued to refer to himself as "Jay," called Sprint and checked the ESN of each Phone before purchasing them for cash.

49.   Sprint investigated the post-sale history of the second set of Phones sold to Defendants and confirmed that these new Sprint iPhones disappeared and were never activated on the Sprint wireless network.  On information and belief, these Phones were resold as new and shipped overseas, unlocked or to be unlocked, and used on a network other than Sprint.

50.   On April 16, 2014, Defendant Miller and the investigator cemented a recurring order for Defendants to buy 50 new Sprint iPhones per week, which was memorialized in text messages and in a Purchase Order that Defendant Lopez emailed to the investigator on behalf of Connections Digital.  A copy of the email and purchase order at annexed hereto as **Exhibit G**; *see* **Exhibit F**.  Specifically, Defendant Miller texted, "I have a buyer that is ready he needs 40 [new Sprint iPhone 4S handsets] like yesterday; I need 10…So I guess that's 50 in all…Can you make that happen[?]"  *See* **Exhibit F**.  Defendant Miller confirmed in writing that is would be a weekly order.  *Id.*

51.     Upon information and belief, when Defendants were unable to fulfill their weekly order through Sprint's investigator, Defendants found a new supplier from whom they purchase at least 50 new Sprint iPhones per week, that they resell for profit.

52.     On April 24, 2014, Defendant Miller texted the investigator again asking to place an order for an additional 113 new Sprint Phones, to be resold to another buyer.  *See* **Exhibit F**.     Upon information and belief, when Sprint's investigator did not respond to Defendants' request, they obtained 113 new Sprint phones from another source for resale to their buyer.

53.     On or about August 28, 2014, an investigator travelled to Connections Digital's retail store located at 230 Auburn Avenue NE, Atlanta, Georgia and spoke to Defendant Lopez and another employee.  Defendant Lopez confirmed that Connections Digital sells phones directly to wholesalers that resell the phones overseas.  On information and belief, Defendant Scott is actively engaged in the business of Connections Digital and the acquisition and bulk resale of Sprint Phones overseas.

54.     Also on or about August 28, 2014, the investigator travelled to the PhoneMax retail store located at 1165 McLendon Avenue NE, Atlanta, Georgia

30307 and spoke with Defendant Teon Miller.  Miller confirmed that he buys Sprint Phones at his store as well.

### SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT

55.    Defendants' actions substantially harm Sprint in several ways, including *inter alia*: (1) Sprint is deprived of the opportunity to recoup its substantial investment in Sprint Phones; (2) Sprint is deprived of the opportunity to earn profits by providing wireless service to legitimate Sprint consumers; (3) Sprint is hampered in its ability to migrate its customers from older to newer technology through legitimate timely upgrades, which negatively impacts the efficiency of Sprint's wireless network speed; (4) Sprint's brand, image and reputation are harmed by the inability to timely remove old Phone models from circulation through legitimate upgrades; (5) Defendants' actions seriously and irreparably interfere with Sprint's relationships with its customers; and (6) Defendants' infringement of the Sprint name and Marks causes significant ongoing and irreparable losses and harm to Sprint's brand, image, and reputation.  All of these factors undermine Sprint's competitive edge in the cellular phone industry.

56.    The conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful acquisition and resale of large quantities of new Sprint Phones has also resulted in shortages of available Sprint Phones, particularly the

most in-demand models. This misconduct substantially harms Sprint and its relationship with dealers, retailers and consumers because Sprint is not able to supply sufficient handsets to satisfy the demand from legitimate consumers who, as a result, go elsewhere for their telecommunications services.

57. Sprint suffers additional, irreparable harm when its Phones are removed from the original packaging and altered because Sprint is deprived of the means to control the quality of its product. This becomes especially damaging where a potential legitimate Sprint customer within the United States acquires a Phone from Defendants, such as through eBay, that the customer believes is a genuine Sprint Phone, with all of the attendant benefits and is later disappointed in Sprint because the Phone does not work as intended on the Sprint network because it has been denominated a Bad ESN Phone or otherwise. Furthermore, the process of unlocking and reselling a Sprint Phone voids the manufacturer's warranty on the device. The unlocked repackaged Sprint Phones are then resold without the original manufacturer's warranty documentation. Both consumers and Sprint are harmed when a Sprint Phone that has been altered or sold by Defendants or their co-conspirators is submitted for warranty repair. Consumers who purchase Sprint Phones from Defendants or their co-conspirators are unable to obtain warranty service

in the event they experience problems with their Phones.  As a result, Sprint's reputation suffers further.

58.    Additionally, confused customers, relying on the Sprint Marks on the Phones they purchase from Defendants, look to Sprint to resolve their questions. Sprint incurs substantial costs associated with calls to its customer relations department to resolve the issues created by Defendants.

59.    Sprint's reputation is further damaged by its inability to assist those consumers who buy Sprint Phones from Defendants, because despite bearing the Sprint Marks, they are no longer valid Sprint Phones because the actions of Defendants and their co-conspirators voided the warranties and as Bad ESN phones they cannot be activated on the Sprint network.

60.    Defendants' conduct has resulted in the dilution of the Sprint Marks; substantial harm to Sprint's business reputation and goodwill; a greater likelihood of confusion, mistake, and deception as to the source of origin of Sprint products unlawfully sold by the Defendants and confusion as to what if any relationship exists between Sprint and Defendants.

61.    On information and belief, Defendants' and their co-conspirators are also engaging in various schemes that usurp legitimate customer upgrades by, *inter alia*, fraudulently requesting subsidized handset upgrades on legitimate Sprint

customer accounts and retaining the new devices while the consumers are left with an outdated device.    The practice of stealing upgrade Phones misappropriates Sprint's investment in the new Phone, intended for the customer, and hinders Sprint's objective of regularly migrating customers to newer devices that work more effectively on Sprint's updated networks.  This migration cannot occur when older devices remain in consumer circulation longer than intended. Defendants' conduct causes harm to Sprint's reputation with its customers, whose devices no longer work as effectively on Sprint's network and other customers, who were defrauded out of their Phone upgrade, no longer have the ability to upgrade their phone if it breaks, and may blame Sprint and leave for another service provider.

## CIVIL LITIGATION AGAINST OTHER PHONE TRAFFICKERS

62.    Federal courts have recognized that conduct similar to Defendants' conduct is unlawful.

63.    In addition to Sprint, T-Mobile USA, Inc., TracFone Wireless, Inc., Nokia Corporation, and AT&T Mobility LLC have each filed multiple lawsuits in numerous federal courts across the country against other traffickers engaged in the practice of defrauding legitimate consumers by acquiring large quantities of wireless telephones and reselling them for profit.  Each of those companies has succeeded in obtaining Final Judgments and Permanent Injunctions.  Copies of

several examples of Final Judgments and Permanent Injunctions are attached hereto as **Composite Exhibit H**.   A defendant in one case who continued trafficking in phones in violation of an injunction issued by the U.S. District Court for the Southern District of Texas was charged with criminal contempt of court and sentenced to serve 57 months in prison.   Copies of the Memorandum Opinion and Order of Contempt, Application for Criminal Contempt, the Order finding cause to believe the defendant is guilty of criminal contempt, and Judgment of Criminal Contempt are attached hereto as **Composite Exhibit I**.

**CRIMINAL INVESTIGATION AND PROSECUTION
OF OTHER PHONE TRAFFICKERS**

64.   Phone traffickers like Defendants have been the subject of numerous criminal investigations and prosecutions across the country.   Some recent examples are:

a.   In August 2014, the United States Attorney for the District of Minnesota announced the indictment of 20 individuals engaged in the illegal acquisition and resale of tens of thousands of Smartphones to the black markets of the Middle East and China.   A joint task force comprised of the U.S. Secret Service, the Minnesota Financial Crimes Task Force, and the St. Paul Police Department investigated and then apprehended members of the "Mustafa Organization," who had been

using runners, engaged in contract and subscription fraud, and robbery to acquire large quantities of subsidized phones for overseas resale.

b. In March, 2013 the California Attorney General charged two individuals with trafficking nearly $4M in wireless phones to Hong Kong over an 8 month period.

c. On August 21, 2012, federal Homeland Security agents and SWAT teams conducted a raid on facilities operated by handset trafficker Ace Wholesale and on the home of the company's CEO, Jason Floarea. Later the same day, Sprint filed suit in federal court against Ace Wholesale, Floarea, and several affiliated entities and persons asserting handset trafficking claims similar to those asserted here. On October 16, 2014, Mr. Floarea, pled guilty to Interstate Transportation of Stolen Property, in part in connection with trafficking Sprint Phones.

d. On or about February 25, 2013, federal law enforcement authorities, including agents from the Federal Bureau of Investigation, the United States Secret Service, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, raided a warehouse belonging to a phone trafficking company called Wireless Buybacks in Elkridge, Maryland, pursuant

to a search warrant and found the facilities were being used to harbor stolen Sprint Phones.  Sprint filed suit against Wireless Buybacks and its affiliates the following day.

e.     An FBI sting operation in Philadelphia that began with wireless phone trafficking resulted in the conviction of 16 individuals on terrorism charges, when it turned out that the proceeds from their phone trafficking and other illegal conduct was being funneled to the terrorist organization Hezbollah.

Copies of court documents, press releases, and news reports regarding these incidents are attached hereto as **Composite Exhibit J.**

## COUNT ONE

## UNFAIR COMPETITION

65.     Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

66.     Defendants' conduct in acquiring and/or inducing others to acquire the Phones, disabling or unlocking, inducing others to disable or unlock, and/or assisting others to disable or unlock the Phones, and reselling and/or assisting others to resell the Phones as new for activation on other wireless networks constitutes unfair competition under the common law of the State of Georgia.

67.     Defendants' conduct in selling, inducing others to sell, and/or assisting others to sell unlocked Sprint Phones undermines Sprint's subsidized incentive programs, constitutes unfair competition under the common law of the State of Georgia.

68.     Defendants' use of at least one of the Sprint Marks in connection with the sale of unlocked, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products and services, and the relationship between Sprint and Defendants.  Thus, Defendants have also engaged in unfair competition with Sprint in violation of the common law of the State of Georgia by selling and/or offering, and promoting their products with the intention of trading upon the goodwill established by Sprint and are thereby misappropriating the benefits of substantial effort and money expended by Sprint in establishing its rights in and to the Sprint Marks.

69.     Defendants' actions were done in bad faith; they were intentional, malicious, and willful, and have caused substantial harm to Sprint.

70.     Sprint is entitled to appropriate relief, including injunctive relief.

## COUNT TWO

### TORTIOUS INTERFERENCE
### WITH BUSINESS RELATIONS

71.     Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

72.     A business relationship, and an expectancy of business relationships, exists between Sprint and authorized dealers of Sprint Phones.

73.     A business relationship, and an expectancy of business relationships, exists between Sprint and authorized retailers of Sprint Phones.

74.     A business relationship, and an expectancy of business relationships, exists between Sprint and current and prospective Sprint customers.

75.     There is a high probability of future economic benefit to Sprint as a result of these current and prospective business relationships.

76.     Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these current and prospective business relationships between Sprint, authorized dealers and retailers who sell Sprint products, and legitimate Sprint customers or prospective customers.

77.     Specifically, but without limitation, Defendants knew that Sprint has business relationships, and an expectancy of business relationships, with legitimate

consumers of Sprint Phones and wireless service.  Defendants interfered with these relationships by engaging in the Bulk Handset Trafficking Scheme and causing, at least in part, Sprint to have an insufficient supply of Sprint Phones available to meet legitimate consumer demand.

78.    Defendants also knew that Sprint has business relationships with authorized dealers and retailers of Sprint Phones to provide said dealers with sufficient quantities of Sprint Phones for their legitimate consumers' use exclusively on Sprint's wireless network.  Defendants' Scheme has resulted in substantial numbers of Sprint Phones that are never activated on Sprint service and has further caused shortages of available Sprint Phones, thereby substantially harming Sprint and its relationship with its authorized dealers and retailers because Sprint is unable to supply dealers with sufficient Phones to satisfy the demands from legitimate consumers.

79.    Defendants also knew that Sprint has business relationships with legitimate Sprint customers to provide them with Phones and service on the Sprint Network.

80.    Defendants are intentionally interfering with Sprint's business relationships and prospective advantages through improper means and in violation of the law.

81.     Defendants engaged in the acts of interference set forth herein with a conscious desire to prevent the relationships from occurring or continuing, or Defendants knew that the interference was certain or substantially certain to occur as a result of their conduct.

82.     Defendants intended their acts to injure Sprint's business relationships and in fact Defendants' acts did injure Sprint's business relationships.

83.     Sprint has been proximately damaged and continues to be damaged as a result of Defendants' interference.

84.     Defendants intentional acts caused injuries to Sprint, including but not limited to financial injuries.

85.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' tortious interference.

86.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' tortious interference.

## COUNT THREE

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

87.     Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

88.    A contractual relationship for a specific term exists between Sprint and authorized dealers and retailers of Sprint Phones.

89.    A contractual relationship exists between Sprint and its customers, the purchasers of its Sprint Phones and wireless service.

90.    Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these contracts between Sprint, and its authorized dealers and retailers and legitimate Sprint customers.

91.    Specifically, but without limitation, Defendants knew that Sprint has contractual relationships with legitimate consumers of Sprint Phones and wireless service.   Defendants interfered with these relationships by, *inter alia*, inducing Runners and Credit Mules or other purchasers of Sprint products to breach their contracts with Sprint.

92.    Defendants also knew that Sprint has contractual relationships with authorized dealers and retailers of Sprint Phones under which these dealers and retailers will promote and sell Sprint products solely for activation on the Sprint network.   On information and belief, Defendants and/or their co-conspirators induce authorized Sprint dealers and retailers to breach their agreements with

Sprint and provide new Sprint Phones to Defendants for a purpose other than activation on the Sprint network and at a financial loss to Sprint.

93.     Defendants engaged in the acts of intentional interference set forth herein with a conscious desire and intent to injure Sprint by inducing breach of contract, or Defendants knew that breach of contract was certain or substantially certain to occur as a result of their conduct.

94.     Sprint has been proximately damaged and continues to be damaged as a result of Defendants' interference.

95.     Defendants intentional acts caused injuries to Sprint, including but not limited to financial injuries.

96.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' tortious interference.

## COUNT FOUR

### CONSPIRACY TO COMMIT FRAUD
### AND FRAUDULENT MISREPRESENTATION

97.     Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above and Paragraphs 115-122, below as though fully set forth herein.

98.     An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to unlawfully acquire in bulk, traffic, and resell unlawfully unlocked and altered Sprint Phones under at least one

of the Sprint Marks, which results in federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, tortious interference with business and contractual relations and prospective economic advantage, common law fraud, fraudulent misrepresentation, unjust enrichment, and violations of the Computer Fraud and Abuse Act, among other things.

99.   Each Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint.

100.   Sprint has been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

101.   There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' conspiracy.

**COUNT FIVE**

**UNJUST ENRICHMENT**

102.   Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

103.   By bulk acquisition of Sprint Phones at less than the manufacturer's cost of the Phones for use on wireless networks other than Sprint's network,

Defendants have obtained benefits from Sprint which have caused significant harm to Sprint and resulted in significant financial gain to Defendants through their resale of the acquired Sprint Phones.

104.   Defendants have acquired the benefits voluntarily and with full knowledge of the benefits.

105.   Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying Sprint the value of the benefits Defendants acquired.

106.   There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' unjust enrichment.

## COUNT SIX

### CONSPIRACY TO INDUCE BREACH OF CONTRACT

107.   Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

108.   Defendants solicit Runners and Credit Mules to purchase Sprint Phones in bulk for the benefit of Defendants.

109.   Defendants' active solicitation of Runners and Credit Mules includes contacting these individuals and requesting that they obtain specific brands and models.

- 35 -

110.   Sprint had valid and existing contracts with these Runners and Credit Mules and other original purchasers of the Phones ("Purchasers").

111.   Defendants had knowledge of the contracts between Sprint and Purchasers, and intended to, and in fact did, induce Purchasers to breach their contracts with Sprint.

112.   The breaches of the contracts were proximately caused by Defendants' misconduct.

113.   Sprint suffered damages as a result.

## COUNT SEVEN

### COMMON LAW FRAUD
### AND FRAUDULENT MISREPRESENTATION

114.   Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

115.   As part of the Bulk Handset Trafficking Scheme, each of the Defendants, directly or indirectly through other co-conspirators, regularly and systematically misrepresent to Sprint that the Phones are being acquired for a legitimate purpose, that the Phones will be used by Defendants or other legitimate consumers on Sprint's wireless network, and that they will perform in accordance with the Terms and Conditions.  For example, on March 28, 2014, Defendant Miller, on behalf of all Defendants, acquired two new Sprint iPhones at which time

he knowingly misrepresented to Sprint that the Phones were being acquired for a legitimate purpose, that the Phones would be used by Defendants or other legitimate consumers on the Sprint wireless network and that they will perform in accordance with the Terms and Conditions.  On April 12, 2014, Defendant Miller, again on behalf of all Defendants, acquired ten new Sprint iPhones at which time he again knowingly made the same misrepresentations to Sprint.

116.   On information and belief, each Defendant participated in defrauding Sprint, and its legitimate customers, to acquire Sprint products including the new Sprint iPhones identified in the investigation, for unlocking, resale and ultimately for reshipping overseas.

117.   When Defendants, directly or through their co-conspirators acquire Sprint Phones as part of the Scheme, do not intend to use the Phones for a legitimate purpose or to activate them or maintain them as active on Sprint's wireless network, or otherwise perform in accordance with the Terms and Conditions.

118.   Defendants and their co-conspirators know that they are required to activate for use the Sprint Phones on the Sprint wireless network, pay the monthly service charges, and otherwise comply with the Terms and Conditions.

119.   Defendants intended for Sprint to rely on their misrepresentations, and/or the misrepresentations of their co-conspirators, to allow Defendants to acquire and unlock the Phones for improper purposes.

120.   Sprint's reliance on the misrepresentations of Defendants and their co-conspirators was reasonable under the circumstances.

121.   Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

122.   There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' fraud.

## COUNT EIGHT

### TRAFFICKING IN COMPUTER PASSWORDS
### 18 U.S.C. § 1030(a)(6)

123.   Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

124.   The Sprint Phones that are trafficked by Defendants are loaded with confidential codes/passwords that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, "Sprint's protected computer networks").   As such, the Phones act as a gateway to Sprint's protected computer networks.   Sprint restricts access to these protected computer networks

through, among other things, the confidential codes/passwords contained in the Phones and the confidential codes and security PINs protecting Sprint accounts ("security codes").

125.   Through their Scheme, Defendants are knowingly trafficking in the confidential codes contained in the Phones and the associated security codes with the intent to defraud Sprint.

126.   Upon information and belief, once Defendants illicitly acquire the Sprint Phones, they use Sprint's confidential codes/passwords to gain additional access to Sprint's protected computer networks.   This additional access into Sprint's protected computer networks is not authorized in any way.   Upon information and belief, Defendants share these confidential codes/passwords and methodologies for unlocking Sprint Phones among themselves and with their co-conspirators.

127.   Upon information and belief, Defendants acquire the unlocking codes/passwords and methodologies for unlocking Sprint Phones by misrepresenting to Sprint, either directly or through one of their co-conspirators, that the Phones are being acquired and unlocked for a legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.

128.   Upon information and belief, Defendants unlawfully access Sprint's protected computer networks using Sprint's confidential codes/passwords to: (1) perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network; and/or (2) unlock the Sprint Phone, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in Sprint Phones and unauthorized changes to Sprint's protected computer networks, so that the Sprint Phone will operate on a wireless network other than Sprint's.

129.   Through the Bulk Handset Trafficking Scheme, Defendants are knowingly trafficking in the confidential codes/passwords contained in the Phones with the intent to defraud and harm Sprint.

130.   Defendants' transfer of the Phones and confidential codes to others constitutes "trafficking" of the codes as defined in 18 U.S.C. § 1029 in that the codes/passwords were transferred, or otherwise disposed of, to others, or Defendants obtained control of the codes/passwords with intent to transfer or dispose of them.

131.   Defendants' trafficking of the Phones substantially affects interstate commerce and communication in that the codes/passwords contained in the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's protected computer networks are used in and affect interstate commerce

and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

132.   Defendants' trafficking of Sprint's codes/passwords has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

133.   With respect to loss, Sprint has spent well in excess of $5,000 over a one-year period assessing its hacked protected computer networks for damage and taking steps to upgrade Sprint's protected computer networks' defenses to prevent future unauthorized access by Defendants and/or their co-conspirators.

134.   Also with respect to loss, Sprint has lost its spent well in excess of $5,000 over a one-year period investigating Defendants' intrusions into Sprint's protected computer networks, assessing the possible impairment to the integrity of its protected computer networks and conducting damage assessment regarding Defendants collection and dissemination of Sprint Phones and security codes, as well as tracking down fraudulently sold Phones.

135.   Moreover, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period in costs in order to discover Defendants' identity

and/or the method by which Defendants' access Sprint's protected computer networks without authorization.

136. With respect to damage, by infiltrating the Sprint computer and telecommunications network and collecting and disseminating the illegally activated Phones and codes/passwords, Defendants have substantially impaired the integrity of Sprint's protected computer networks in an amount in excess of $5,000. Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its products and services.

137. Defendants' activities constitute trafficking in computer passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6).

138. Defendants' conduct is intentional, malicious and willful.

139. Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief for the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT NINE

## UNAUTHORIZED ACCESS
## 18 U.S.C. § 1030(a)(5)(C)

140.   Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

141.   The Sprint Phones that are acquired by the Defendants, directly and/or from their co-conspirators in furtherance of the Bulk Handset Trafficking Scheme, are loaded with codes/passwords that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, "Sprint's protected computer networks"). Sprint restricts access to these protected computer networks through, among other things, the confidential codes/passwords contained in the Phones and the confidential codes and security PINs protecting Sprint accounts ("security codes").

142.   Sprint Phones are connected to and activated on Sprint's protected computer networks when purchased from Sprint.

143.   Sprint's proprietary computer system holds confidential information and is connected to the internet, and assists in providing federally-regulated telecommunications services.  Sprint's computer systems are "protected computers"

as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

144.   In furtherance of their Bulk Handset Trafficking Scheme, Defendants and/or their co-conspirators use fraud and misrepresentation to acquire Phones from Sprint, like the iPhone, and in so doing void any purchase agreement and any legitimate access to Sprint's computer networks.   As such, Defendants' access to the Phones and into Sprint's protected computer networks is not authorized in any way.

145.   Upon information and belief, once Defendants illicitly acquire the Sprint Phones, they use confidential codes/passwords to gain additional illegal access to Sprint's protected computer networks.   This additional access into Sprint's protected computer networks is not authorized in any way.

146.   Upon information and belief, Defendants acquire the unlocking codes/passwords and methodologies for unlocking Sprint Phones by misrepresenting to Sprint, either directly or through one of their co-conspirators, that the Phones are being acquired and unlocked for a legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.

147.   Defendants knowingly and with the intent to defraud, cause Sprint to access its proprietary computer systems.   Defendants are not authorized to do so.

148.   Further, by illicitly acquiring and unlocking the Phones, Defendants necessarily access the Sprint protected computer networks because the Phones are connected to those networks when acquired from Sprint.

149.   Defendants acquire and, in some circumstances, unlock the Phones by misrepresenting to Sprint either directly or through a third-party agent that the Phones are being acquired and unlocked for a legitimate purpose, and for use by legitimate consumers on Sprint's computer networks, when in fact, they are not. Defendants use fraud and misrepresentation to acquire the Phones from Sprint, and, as such, Defendants' access of Sprint's protected computer networks is not authorized in any way.

150.   Upon information and belief, when Defendants acquire a Sprint Phone from Runners/Mules acting on their behalf, Defendants carefully examine the Phone, turn it on, and perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network and that the various electronic code numbers and access numbers loaded on the Phone are correct.  This too constitutes unauthorized access of Sprint's protected computer networks via a password obtained through fraud and misrepresentation.

151.  By trafficking in activated Sprint Phones, the Defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

152.  Defendants' illegal and unauthorized access of Sprint's protected computer systems allows them to improperly steal Sprint's investment in its Phones.

153.  Defendants' activities substantially affect interstate commerce and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

154.  Defendants' unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

155.  With respect to loss, Sprint has lost its investments in the stolen Phones and security codes and spent well in excess of $5,000 investigating and

assessing the possible impairment to the integrity of its protected computer systems, taking remedial action to counteract Defendants' intrusions, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones.

156.   Moreover, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period in costs to discover Defendants' identity and/or the method by which Defendants' accessed Sprint's protected computer networks without authorization.

157.   With respect to damage, by infiltrating the Sprint computers systems and collecting and disseminating the illegally trafficked Phones and security codes, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's financial investment in its Phones.

158.   Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

159.   Defendants' conduct is intentional, malicious and willful.

160.   Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and

other equitable relief because of the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT TEN

### UNAUTHORIZED ACCESS WITH INTENT TO DEFRAUD
### 18 U.S.C. § 1030(a)(4)

161.   Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

162.   The Sprint Phones that are acquired by the Defendants, directly and/or from their co-conspirators, in furtherance of the Bulk Handset Trafficking Scheme are loaded with codes/passwords that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, "Sprint's protected computer networks").  In addition, manufacturers that produce wireless phones for Sprint install proprietary and confidential software, ordered and paid for by Sprint, on the Sprint Phones to lock the Phones to Sprint's protected computer networks and prevent the Phones from being used outside the Sprint network.

163.   Sprint Phones are connected to and activated on Sprint's protected computer networks when purchased from Sprint.

164.   In furtherance of their Bulk Handset Trafficking Scheme, Defendants and/or their co-conspirators use fraud and misrepresentation to acquire Phones from Sprint, like iPhone, and in so doing void any purchase agreement and any legitimate access to Sprint's computer networks.  As such, Defendants' access to the Phones and into Sprint's protected computer networks is not authorized in any way.

165.   Upon information and belief, once Defendants illicitly acquire the Sprint Phones, they use confidential codes/passwords to gain additional illegal access to Sprint's protected computer networks.  This additional access into Sprint's protected computer networks is not authorized in any way.

166.   Upon information and belief, Defendants acquire the unlocking codes/passwords and methodologies for unlocking Sprint Phones by misrepresenting to Sprint, either directly or through one of their co-conspirators, that the Phones are being acquired and unlocked for a legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.

167.   Upon information and belief, Defendants unlawfully hack into Sprint's protected computer networks using confidential codes/passwords to: (1) perform

various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network; and/or (2) unlock the Sprint Phone, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in Sprint Phones and unauthorized changes to Sprint's protected computer networks, so that the Sprint Phone will operate on a wireless network other than Sprint's.

168. Defendants are knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

169. Defendants' access of Sprint's protected computer systems allows them to improperly steal Sprint's substantial financial investment in its Phones.

170. Sprint's protected computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

171. Defendants' activities substantially affect interstate commerce and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and

communication, and provide wireless telecommunications service pursuant to licenses issued by the Federal Communications Commission.

172. Defendants' unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --   substantially in excess of $5,000 over a one-year period.

173. With respect to loss, Sprint has spent well in excess of $5,000 over a one-year period assessing its hacked protected computer networks for damage and taking steps to upgrade Sprint's protected computer networks' defenses to prevent future unauthorized access by Defendants and/or their co-conspirators.

174. In addition, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period identifying the impairment of or damage to Sprint's protected computer networks that Defendants' and/or their co-conspirators accessed with authorization.

175. Further, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period in costs associated with investigating Defendants' and/or their co-conspirators' intrusions into Sprint's protected computer networks and taking subsequent remedial measures.

176.   Moreover, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period in costs in order to discover Defendants' identity and/or the method by which Defendants' accessed Sprint's protected computer networks without authorization.

177.   With respect to damage, by infiltrating the Sprint computers systems and collecting and disseminating the illegally obtained Phones, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000.   Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's financial investment in its Phones.

178.   Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

179.   Defendants' conduct is intentional, fraudulent, malicious and willful.

180.   Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint

and its customers as a result of Defendants' conduct during any one year period aggregated is at least $5,000 in value.

## COUNT ELEVEN

### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114 [§ 32(1) of the Lanham Act]

181.   Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

182.   Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of certain federally-registered Sprint Communications Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

183.   Defendants' and/or their co-conspirators' use of certain federally-registered Sprint Communications Marks in connection with the sale of Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' infringing products, and the relationship between Sprint Communications and Defendants.

184.   Defendants' and/or their co-conspirators' unauthorized use of certain federally-registered Sprint Communications Marks in connection with their participation in the Scheme is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of Sprint Communications.

185.   Defendants' and/or their co-conspirators' use of certain federally-registered Sprint Communications Marks in connection with the unlocked, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, and have been flagged as "Bad ESN" Phones and not able to be activated on the Sprint network, constitutes a misappropriation of Sprint Communications' distinguishing and identifying federally-registered trademarks that were created as a result of significant effort and expense by Sprint Communications over a long period of time.

186.   Defendants' and/or their co-conspirators' use of certain federally-registered Sprint Communications Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Sprint Communications, and is likely to mislead the trade and public into believing

that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint Communications.

187. Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Sprint Communications and the reputation and goodwill of Sprint Communications, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint Communications.

188. Sprint Communications is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

189. Defendants' aforesaid acts constitute willful infringement of Sprint Communications' aforementioned federally registered trademarks in violation of 15 U.S.C. § 1114.

## COUNT TWELVE

### FEDERAL COMMON LAW TRADEMARK INFRINGEMENT AND FALSE ADVERTISING
### 15 U.S.C. § 1125 (a)(1)(A) and (B) [§ 43(a) of the Lanham Act]

190. Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

191. Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of at least one of the Sprint Marks without authorization in

connection with their conspiracy to sell and offer for sale unlocked, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state, are inoperable on the Sprint network, and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

192.   Defendants' and/or their co-conspirators' use of at least one of the Sprint Marks in connection with the sale of unlocked, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products, and the relationship between Sprint and Defendants.

193.   Defendants' and/or their co-conspirators' unauthorized use of at least one of the Sprint Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Sprint.

194.   Defendants' and/or their co-conspirators' use of at least one of the Sprint Marks in connection with the unlocked, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, and have been flagged as "Bad ESN" Phones and not able to be activated on the Sprint network, constitutes a misappropriation of at least one

of the distinguishing and identifying Sprint Marks that was created as a result of significant effort and expense.

195.   Defendants' and/or their co-conspirators' use of at least one of the Sprint Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Sprint, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint.   Defendants are not affiliated with Sprint in any way.

196.   Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Sprint and the reputation and goodwill of Sprint, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint.

197.   Sprint is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

198.   Defendants' use of at least one of the Sprint Marks in commercial advertising or promotion misrepresents the nature, characteristics, and/or qualities of

their infringing products.  Defendants' advertising and promotion is false or misleading.  Defendants' advertising and promotion deceives or has the capacity to deceive consumers.  The deception and misrepresentations have a material effect on the purchasing decisions and affect interstate commerce.

199.   Defendants' activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B).

200.   Sprint is entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

201.   Defendants knew or should have known that Plaintiffs are the owners and/or authorized licensees of the Sprint Marks and that Defendants had no legal right to use any of the Sprint Marks on their infringing products.

202.   Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiffs' lost profits, Defendants' profits, and Plaintiffs' attorneys' fees.

## COUNT THIRTEEN

## CONTRIBUTORY TRADEMARK INFRINGEMENT

203.   Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

204.   By misappropriating and using at least one of the Sprint Marks in connection with the Bulk Handset Trafficking Scheme, Defendants knowingly aided and enabled distributors and/or sellers of their products to market them to members of the general public in a way that infringes at least one of the Sprint Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

205.   Defendants' unlawful, unauthorized, and unlicensed sale of the unlocked Sprint Phones has contributed to the creation of express and implied misrepresentations that the Sprint Phones, as sold by Defendants, were created, authorized or approved by Sprint, may be activated on the Sprint network, and include warranties.

206.   Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers who purchase Bad ESN Sprint Phones altered by Defendants to believe that they are purchasing handsets approved by Sprint that can be activated on the Sprint network and containing original warranties.

207.   Defendants' conduct constitutes contributory infringement in violation of the Trademark Act.  Defendants' conduct is intentional, malicious and willful.

208.   Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

209.   There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' actions.

## COUNT FOURTEEN

### CONVERSION

210.   Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

211.   Defendants have and are engaged in acts of conversion in violation of the law of the State of Georgia.

212.   Sprint has the right to provide its Phones and wireless service to the public.  Defendants have no such privilege or right.

213.   Defendants knew or should have known that they obtained the Phones through illegitimate means and had no legal right to advertise, use or resell them.

214.   Defendants are wrongfully interfering with Sprint's rights by engaging in the Bulk Handset Trafficking Scheme.

215.   Defendants intentionally and willfully exerted dominion and ownership over the Sprint Phones.

216.   Defendants' conversion of Sprint's property has caused and continues to cause Sprint to suffer irreparable injury, loss of reputation, and exemplary damages to be proved at trial.  Unless enjoined by this Court, Defendants will continue these acts, thereby causing Sprint further immediate and irreparable damage.

## COUNT FIFTEEN

### DECEPTIVE TRADE PRACTICES
### O.C.G.A. § 10-1-372, *et seq.*

217.   Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

218.   Defendants have and are engaged in acts or practices in violation of the prohibition against deceptive trade practices found at O.C.G.A. § 10-1-372, *et seq.*

219.   Defendants have used and are using the Sprint Marks in connection with the above-described unlawful activities, including, but not limited to, the Bulk Handset Trafficking Scheme in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of their products and services.  The use of the Sprint Marks by Defendants creates an unreasonable risk that present and potential

consumers and subscribers may falsely conclude that there exists some affiliation, connection, or association between and among Sprint and Defendants.

220.   Defendants' acts have damaged, impaired, and diluted that part of Sprint's goodwill symbolized by the Sprint Marks.  The nature, probable tendency, and effect of Defendants' use of these marks in the manner alleged are to enable Defendants to deceive the public.

221.   Defendants' use of the Sprint Marks in the manner alleged constitutes deceptive trade practices of a type prohibited by O.C.G.A. § 10-1-372, *et seq.*

222.   Defendants had actual knowledge of Sprint's rights at the time they decided to use the Sprint Marks in connection with their fraudulent scheme.  Thus, Defendants actions were willful and deliberate.

223.   Defendants' unfair business practices are of a recurring nature and harmful to the consumers and the public at large, as well as to Sprint.  These practices constitute unlawful, unfair, fraudulent, and deceptive business practices, and unfair, deceptive, untrue, and misleading advertising.

224.   As a result of Defendants' acts, Sprint has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of

this Court.   Unless enjoined by this Court, Defendants will continue these acts, thereby causing Sprint further immediate and irreparable damage.

## COUNT SIXTEEN

### GEORGIA COMPUTER SYSTEMS PROTECTION ACT
### O.C.G.A. §16-9-93(a), (b), and (e)

225.   Sprint reasserts the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

226.   The Sprint Phones that are purchased by the Defendants are loaded with codes that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, the "protected computer networks"). Sprint restricts access to these protected computer networks through, among other things, the confidential codes/passwords contained in the Phones and the confidential codes and security PINs protecting Sprint accounts ("security codes").

227.   Upon information and belief, once Defendants illicitly acquire the Sprint Phones, they use Sprint's confidential codes/passwords to gain additional access to Sprint's protected computer networks.   This additional access into Sprint's protected computer networks is not authorized in any way.   Upon information and belief, Defendants share these confidential codes/passwords and

methodologies for unlocking Sprint Phones among themselves and with their co-conspirators.

228.   Upon information and belief, Defendants acquire the unlocking codes/passwords and methodologies for unlocking Sprint Phones by misrepresenting to Sprint, either directly or through one of their co-conspirators, that the Phones are being acquired and unlocked for a legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.

229.   Upon information and belief, Defendants unlawfully access Sprint's protected computer networks using Sprint's confidential codes/passwords to: (1) perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network; and/or (2) unlock the Sprint Phone, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in Sprint Phones and unauthorized changes to Sprint's protected computer networks, so that the Sprint Phone will operate on a wireless network other than Sprint's.

230.   Through the Bulk Handset Trafficking Scheme, Defendants are knowingly trafficking in the confidential codes/passwords contained in the Phones with the intent to defraud and harm Sprint.

231.   By trafficking in activated Sprint Phones, the Defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

232.   Defendants' conduct also exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants (or their co-conspirators) were initially permitted to access Sprint's protected computer networks when they originally acquired the Phones from Sprint, but by acquiring the Phones solely to resell them without paying the monthly service charges and ETF fees, Defendants' access of Sprint's protected computer networks exceeds authorized access.

233.   Defendants' access of Sprint's protected computer systems allows them to improperly steal Sprint's financial investment in its Phones.

234.   Defendants' activities constitute unauthorized computer access resulting in damage in violation of Georgia's Computer Systems Protection Act, O.C.G.A. § 16-9-93(a), (b), and (e)

235.   Defendants' conduct is intentional, malicious and willful.

236.   As a result of the foregoing, Sprint has been damaged.  Sprint is entitled to appropriate relief as requested hereinafter, including injunctive relief, compensatory and punitive damages, and attorney's fees.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

WHEREFORE, Plaintiffs, Sprint Solutions, Inc. and Sprint Communications Company L.P., respectfully request that this Court enter final judgment and permanent injunctive relief in favor of Plaintiffs and against Defendants, as follows:

(a)     awarding Plaintiffs their compensatory, consequential, statutory and special damages including, without limitation, their lost profits, Defendants' profits, loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b)     awarding Plaintiffs their reasonable attorneys' fees and costs associated with this action;

(c)     granting permanent injunctive relief in favor of Plaintiffs and against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint;

(d)     requiring Defendants, pursuant to the Lanham Act, to deliver to Plaintiffs their entire inventory of phones and products bearing

or infringing the Sprint Marks or a confusingly similar copy thereof; and

(e)   granting such further relief as this Court deems just and proper.

Respectfully submitted this 23rd day of January, 2015.

By:  */s/ Gail E. Podolsky*
      Gail E. Podolsky
      Georgia Bar No. 142021
      Email: gpodolsky@CFJBLaw.com
      **CARLTON FIELDS JORDEN BURT, P.A.**
      1201 West Peachtree Street
      Suite 3000
      Atlanta, Georgia 30309
      Phone:  (404) 815-2714
      Fax:  (404) 815-3415

      James B. Baldinger
      Florida Bar No. 869899
      Email: jbaldinger@CFJBLaw.com
      *To be admitted pro hac vice*
      Stacey K. Sutton
      Florida Bar No. 0289530
      Email: ssutton@CFJBLaw.com
      *To be admitted pro hac vice*
      **CARLTON FIELDS JORDEN BURT, P.A.**
      525 Okeechobee Boulevard
      Suite 1200
      West Palm Beach, Florida  33401
      Phone:  (561) 659-7070
      Fax:  (561) 659-7368

      *Attorneys for Sprint Solutions, Inc. and*
      *Sprint Communications Company L.P.*

- 67 -